# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | NUMBER 15-288 |
| BARRON CONN | SECTION "S" |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Barron Conn's Motion brought under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct his Sentence (Doc. #63) is **DENIED**.

## BACKGROUND

On December 3, 2015, the Grand Jury in the Eastern District of Louisiana indicted Barron Conn and his then-girlfriend, Kwana Parker, in connection with a drug trafficking operation. Conn was charged with: (Count1) conspiracy to distribute and posses with the intent to distribute five kilograms or more of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846; and, (Count 2) possession with the intent to distribute five kilograms or more of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). At the time of the offense, Conn had two prior felony drug convictions. Thus, he was facing a mandatory life sentence pursuant to 21 U.S.C. §§ 851 and 841(b)(1)(A), if the government chose to file a bill of information establishing those prior convictions. Also, at the time that Conn was indicted in this case, he had been charged with money laundering in the 9th Judicial District of Texas, Montgomery County, Case Number 15-06-05835.

The circumstances that led to the December 3, 2015, Indictment against Conn and Parker are summarized in the Factual Basis entered into the record in connection with Conn's guilty plea in this case. Doc. #54. The Factual Basis states:

Since approximately June 2015, members of the Drug Enforcement Agency ("DEA") have conducted an investigation into the narcotics trafficking activities of CONN and his associates. Ultimately, the investigation revealed that CONN was a Kentucky-based cocaine trafficker who attempted and conspired to purchase kilogram-weight quantities of cocaine in Texas and in the Eastern District of Louisiana from sources of supply so that he could bring the cocaine back to Kentucky for resale to customers.

Specifically, on June 6, 2015, a Deputy from the Montgomery County Sheriff's Office in Texas observed a 2009 Volvo SUV bearing Kentucky license plate 285JVR commit several traffic violations while driving southbound on State Highway 59 from Lufkin, Texas. The Deputy conducted a traffic stop, and observed that co-conspirator Kwana Parker was driving the Volvo, and that CONN was in the front passenger seat. Parker identified herself with a Kentucky drivers' license. After Parker refused to provide consent to search the vehicle, a narcotics K-9 was brought to the vehicle and conducted a sniff of the exterior of the Volvo, which yielded a positive result. The Deputy then searched the Volvo and observed what appeared to be a narcotics trap underneath the front driver's seat. He pried open the compartment and seized a large quantity of U.S. Currency. The Deputy also found a similar trap under the front passenger seat, and also seized another quantity of U.S. currency. In all, $300,000 of U.S. Currency was seized from both traps, and another $2,932 was seized from Parker's handbag. Both Parker and CONN were arrested at that time, and were charged with Texas state money laundering offenses.

CONN was interviewed after his arrest by Special Agents from the DEA. After receiving Miranda warnings, CONN admitted, "The money is mine," and stated that he knew the amount of money in the car was "300." CONN then later stated, "You can have it, I know I'm not getting it back," claiming that the money represented gambling proceeds.

Subsequently, DEA Agents received information from a confidential informant ("CI") regarding CONN. According to CI, CONN intended to use the aforementioned $300,000 confiscated in June to purchase cocaine in Houston, Texas from CI.

2

Subsequently, in September 2015, CI again arranged to sell CONN cocaine, this time in a controlled setting. Specifically, between September 28, 2015 and September 30, 2015, CI recorded five telephone calls with CONN at CONN's telephone (323) 548-3083. During those calls, CI and CONN, using coded and cryptic language, discussed that CONN would travel to New Orleans, Louisiana in order to purchase nine (9) kilograms of cocaine. CI and CONN discussed the vehicle that CONN intended to drive to New Orleans, the approximate travel time, and the date of the proposed meeting, which was to be September 30th. Moreover, CI and CONN specifically discussed the price per kilogram for the transaction, which they ultimately agreed would be $30,500 (*i.e.*, a total price of $274,500 for all nine kilograms).

On September 30, 2015, the date of the nine-kilogram transaction, Special Agents from the DEA and Troopers from the Louisiana State Police observed a 2008 Dodge Ram bearing Kentucky license plate 988LPR driving southbound on I-59 in St. Tammany Parish. After observing a traffic violation, a Trooper conducted a traffic stop of the Dodge, observing that Parker was driving the vehicle, and that CONN was the only passenger in the Dodge. Parker and CONN both appeared nervous, and Louisiana State Police conducted a K-9 sniff of the vehicle, with positive results. The Trooper searched the Dodge, encountering what appeared to be a trap inside the vehicle. Ultimately, DEA seized approximately $279,910 from the trap, which is roughly consistent with the purchase price of the cocaine negotiated between CONN and CI. A Special Agent from the DEA later interviewed both Parker and CONN after providing Miranda warnings. CONN and Parker both stated that they did not know that there was currency inside the vehicle. Parker also disclaimed knowledge of the currency seized in June from the Volvo. When asked about that prior seizure, CONN again repeated his prior claim that the currency seized in Texas reflected his gambling winnings.

After the seizure, CONN and Parker were released without any charges being brought at that time. CONN placed another telephone call to CI, during which CONN described that he had been stopped by the police, and that "they done tapped us off again." CONN also indicated to CI that he had "half a dollar sitting in the air," which the DEA believes refers to the more than $500,000 that was seized from CONN within the past several months. CONN also referred to his cousin, who CONN initially had intended to use to drive the money from Kentucky to New Orleans in September 2015.

3

> CONN further indicated that he had previously informed his cousin that any money left over from the narcotics transaction would be given to him.

DEA Special Agent Chad Scott was present at the September 30, 2015, traffic stop. On June 22, 2016, the government wrote Conn's counsel to disclose a pending investigation against Scott regarding his alleged misconduct in his role as a DEA Agent. On September 29, 2017, Scott was indicted by a Grand Jury in the Eastern District of Louisiana and charged with: falsification of government records; obstruction of justice; perjury; conspiracy to convert property of another by an officer or employee of the United States and removal property to prevent seizure; conversion of property of another by an officer or employee of the United States; removal of property to prevent seizure; and, seeking and receiving an illegal gratuity. The charges stem from Scott's work as a DEA Special Agent, but do not directly relate to Conn's case.

On January 11, 2017, the government filed a Superseding Bill of Information charging Conn with conspiracy to distribute and possess with the intent to distribute a quantity of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. On January 19, 2017, Conn pleaded guilty to the charge in the Superseding Bill of Information pursuant to a negotiated plea agreement entered under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. In the plea agreement, the parties stipulated to a sentence of 60 months imprisonment to be served concurrently with the sentence of 60 months imprisonment imposed on Conn in the 9th Judicial District of Texas, Montgomery County, Case Number 15-06-05835. The government agreed not to seek a sentencing enhancement pursuant to § 851. The plea agreement provided that, if the court rejected the Rule 11(c)(1)(C) negotiated sentence and Conn persisted with his plea, he would face a maximum term of imprisonment of 20 years, instead of the mandatory life sentence that he

previously faced. The government also agreed to dismiss the pending indictment against Conn and Parker. In his plea agreement, Conn waived the right to collaterally challenge his sentence in a motion made under 28 U.S.C. § 2255, but retained "the right to raise a claim of ineffective assistance of counsel in an appropriate proceeding."

At his rearriagnment, Conn acknowledged that this is the agreement he entered into and that he signed the document. Conn affirmed that he was pleading guilty of his own free will. Further, Conn acknowledged that he was entirely satisfied with the advice and services of his counsel and he had adequate time to discuss his case with his attorney as well as any defenses he might have. Conn also stated that the facts stated in the Factual Basis were an accurate description of what occurred.

On April 27, 2017, this court accepted the Rule 11(c)(1)(C) plea agreement and sentenced Conn to 60 months in the custody of the Bureau of Prisons to be served concurrently with the sentence imposed in the 9th Judicial District of Texas, Montgomery County, Case Number 15-06-05835.

On April 23, 2018, Conn filed the instant motion for post conviction relief pursuant to 28 U.S.C. § 2255. Conn argues that Scott planted the money in the vehicle during the September 20, 2015, traffic stop. Conn argues he is entitled to relief because he was denied effective assistance of counsel in that: (1) his attorney failed to present a coherent argument for police fabrication regarding Scott's purported actions, and (2) his attorney failed to challenge the pretextual stop as being illegal. The government concedes that Conn's motion was timely filed and the issue of effective assistance of counsel was not waived in the plea agreement. The government argues that

Conn cannot demonstrate that he received ineffective assistance of counsel because he cannot show that he would have had a more favorable result had he gone to trial.

## ANALYSIS

Pursuant to § 2255, a prisoner in custody under a federal court sentence may seek relief on four grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or, (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255. If the district court determines that a petitioner is entitled to relief under § 2255, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. at § 2255(b) .

Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Segler, 37 F.3d 1131, 1133 (5th Cir. 1994) (quoting United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam)). Accordingly, "[a] defendant ... may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." United States v. Shaid, 937 F.2d 228, 232 (5th Cir. 1991). A defendant can establish "cause" by showing that an objective impediment that is external to his defense prevented him from raising a claim on direct appeal. United States v. Flores, 981 F.2d 231, 235 (5th Cir. 1993). To show "actual prejudice" the defendant must demonstrate not just the possibility of prejudice, "but an actual and substantial disadvantage, infecting his entire [proceedings] with error of constitutional dimension." Shaid, 937

F.2d at 233, "[A]bsent unusual circumstances, ineffective assistance of counsel, if shown, is sufficient to establish the cause and prejudice necessary to overcome a procedural default." United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995).

To succeed on a claim of ineffective assistance counsel, petitioner must show: (1) that his counsel's performance was deficient; and (2) that his counsel's deficient performance prejudiced his defense. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). A claim of ineffective assistance of counsel is defeated if the petitioner fails to establish either deficient performance or resulting prejudice. United States v. Chavez, 193 F.3d 375, 378 (5th Cir. 2000).

Deficient performance by counsel is established by showing "that counsel's representation fell below an objective standard of reasonableness."Strickland, 104 S.Ct. at 2064. In applying this standard, the "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 122 S.Ct. 1843, 1854 (2002) (quoting Strickland, 104 S.Ct. at 2052). The "objective standard of reasonableness" requires "that counsel research relevant facts and law, or make an informed decision that certain avenues will not be fruitful." United States v. Conley, 349 F.3d 837, 841 (5th Cir. 2003) (quotations omitted). However, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002) (quotations omitted). Thus, "[i]nformed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed." Id. (quotations omitted).

To demonstrate prejudice caused by counsel's allegedly deficient performance, the petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S.Ct. at 2068. "When a defendant alleges that his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain." Lee v. United States, 137 S.Ct. 1958, 1695 (2017). Instead, the court considers "whether the defendant was prejudiced by the denial of the entire judicial proceeding to which he had a right." Id. (quotations omitted). Thus, a defendant who "claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, . . . can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. (quotation omitted).

Conn argues that his attorney was ineffective for failing to further investigate Scott's alleged wrongdoing and present a defense of police misconduct. Conn's counsel could not have presented the defense of police misconduct because Conn chose to plead guilty and there was no trial at which to present such a defense. When he pleaded guilty, Conn had been aware of the investigation into Scott's activities for 6 months. At his rearraignment, the court asked Conn if he had sufficient time to discuss with his attorney the facts of his case and any defenses he might have. Conn replied that he did and that he was entirely satisfied with the advice and services of his attorney. Conn also acknowledged his guilt and admitted the accuracy of the Factual Basis. Conn's attorney did not cause him to lose the opportunity to bring the defense of police misconduct at a trial, but rather Conn relinquished it by choosing to plead guilty. Moreover, Conn received a favorable plea agreement that eliminated his exposure to a life sentence and resulted in a 60 month sentence that runs

8

concurrently with another sentence he is serving. Therefore, Conn has not established that his attorney was deficient for not raising at trial the defense of police misconduct.

Conn also argues that his attorney was ineffective for failing to file a motion to suppress the evidence obtained at the September 30, 2015, traffic stop. It is unlikely that Conn would have prevailed on such a motion considering that the police initiated the traffic stop after observing the vehicle in which he was traveling commit traffic violations. Further, the police had probable cause to stop the vehicle because Conn participated in recorded telephone calls with a confidential informant to arrange the drug transaction, described the vehicle he would use to travel to New Orleans, and that he was stopped by police on the day that he and the confidential informant had agreed to meet. If Conn's attorney had filed a motion to suppress, it may have jeopardized the favorable plea agreement that was negotiated. This is the type of informed strategic decision that is entitled to deference and does not constitute ineffective assistance of counsel.

Finally, Conn argues that his plea was coerced due to the ineffectiveness of his counsel. This court has determined that Conn's counsel was not ineffective as alleged by Conn. Also, at his rearraignment Conn stated that he was pleading knowingly, voluntarily and of his own free will, and that he was not pleading guilty because of any threats made by anybody. Moreover, the suggestion that Conn's plea was coerced is belied by the favorable terms of the plea agreement. Therefore, Conn's motion brought under § 2255 to vacate, set aside, or correct his sentence is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Barron Conn's Motion brought under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct his Sentence (Doc. #63) is **DENIED**.

New Orleans, Louisiana, this   2nd   day of July, 2018.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**